USCA1 Opinion

 

 May 6, 1992 _________________________ No. 91-2276 UNITED STATES OF AMERICA, Appellee, v. THOMAS P. ATWOOD, Defendant, Appellant. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Gene Carter, U.S. District Judge] ___________________ _________________________ Before Breyer, Chief Judge, ___________ Selya and Cyr, Circuit Judges. ______________ _________________________ Robert M. Napolitano on brief for appellant. ____________________ Richard S. Cohen, United States Attorney, and F. Mark __________________ ________ Terison, Assistant United States Attorney, on brief for the _______ United States. _________________________ _________________________ SELYA, Circuit Judge. This criminal appeal requires SELYA, Circuit Judge. ______________ that we determine whether the government shortchanged the appellant in respect to complying with a plea agreement. Finding that appellant neglected to ask the government to do that which he now condemns the government for not doing, we affirm the conviction and sentence. Cf., e.g., John 16:24 ("Ask and ye ___ ____ ____ shall receive."). I I _ Background Background __________ On March 13, 1991, a federal grand jury in the District of Maine returned an indictment charging defendant-appellant Thomas P. Atwood with conspiracy to distribute lysergic acid diethylamide (LSD). In July, appellant pled guilty pursuant to a written plea agreement (Agreement). The Agreement provided, in relevant part, that appellant would cooperate with the government and assist in ongoing investigations. In return, the prosecution made three essential commitments: 1. To grant appellant use immunity (save only for serious crimes of violence). 2. To refrain from opposing a two-level reduction in the base offense level, U.S.S.G. 3E1.1, for appellant's acceptance of responsibility. 3. To divulge the extent of appellant's assistance in certain circumstances, viz.: "At the request of the defendant, the United ________________________________ States Attorney's Office for the District of Maine will make known the cooperation of the defendant to any individual or entity to whom the defendant wishes such information disseminated." (Emphasis supplied.) The Agreement contained no promise of a specific sentencing 2 recommendation. Rather, both parties reserved the right to petition the district court "for the imposition of any lawful sentence . . . ." On November 26, 1991, appellant was sentenced. The prosecutor recommended that the court impose a sentence at the low end of the guideline sentencing range (GSR). Apart from this comment, the prosecutor, to all intents and purposes, stood mute. The court reviewed the presentence investigation report (PSI Report), set the GSR at 210-262 months (offense level 34; criminal history category IV),1 and sentenced appellant at the range's nadir. This appeal followed. II II __ Issue Presented Issue Presented _______________ On appeal, appellant is represented by a new attorney. Counsel's argument is classic in its simplicity. He asseverates that "the government breached the terms of the plea agreement when it failed to advise the sentencing court of the nature and extent of the defendant's cooperation." Had the government done so, counsel's thesis runs, the sentencing court might have departed downward, thus shortening appellant's sentence.2 ____________________ 1In establishing the GSR, the district court gave Atwood the two-level credit for acceptance of responsibility contemplated by the Agreement. The prosecution did not oppose this adjustment. 2By means of a supplemental brief, appellant has attempted to raise a second issue, contending that the district court improperly relied on two uncounselled "drunk driving" convictions in determining his criminal history score. But, the PSI Report stated specifically that Atwood "was always represented by counsel" in his previous dealings with the courts. Atwood did not object to, or contradict, this statement. Similarly, he did 3 III III ___ Analysis Analysis ________ A. A. __ Appellate Jurisdiction Appellate Jurisdiction ______________________ We confront, first, a threshold issue: the government contends that there is no appellate jurisdiction. We disagree. It is settled beyond peradventure in this circuit that, ordinarily, a criminal defendant cannot ground an appeal on the trial court's failure to depart downward from the GSR. See, ___ e.g., United States v. Amparo, ___ F.2d ___, ___ (1st Cir. 1992) ____ _____________ ______ [No. 91-2010, slip op. at 10]; United States v. Lauzon, 938 F.2d ______________ ______ 326, 330 (1st Cir.), cert. denied, 112 S. Ct. 450 (1991); United _____ ______ ______ States v. Romolo, 937 F.2d 20, 22 (1st Cir. 1991); United States ______ ______ _____________ v. Harotunian, 920 F.2d 1040, 1044 (1st Cir. 1990); United States __________ _____________ v. LaGuardia, 902 F.2d 1010, 1012 (1st Cir. 1990). But, this _________ appeal is a different breed of cat. The appeal does not challenge the lower court's failure to depart per se. Rather, ___ __ the appeal zeroes in on alleged prosecutorial misconduct, appellant claiming that the government breached a material term of a binding plea agreement. We have regularly exercised appellate jurisdiction to oversee claims of that genre. See, ___ e.g., United States v. Canada, ___ F.2d ___, ___ (1st Cir. 1992) ____ _____________ ______ [No. 91-1691, slip op. at 11-19]; United States v. Oyegbola, ___ _____________ ________ ____________________ not object to the district court's use of the "drunk driving" convictions. Under these circumstances, the issue that is the subject of Atwood's supplemental brief has not been preserved for appellate review. See United States v. Dietz, 950 F.2d 50, 55-56 ___ _____________ _____ (1st Cir. 1991) (listing other cases). 4 F.2d ___, ___ (1st Cir. 1992) [No. 91-1152, slip op. at 8-10]; United States v. Garcia, 954 F.2d 12, 17-18 (1st Cir. 1992). The _____________ ______ government has given us no reason either to doubt the propriety of this practice or to eschew it here. We will not paint the lily. An appellate court has jurisdiction, on direct review, to consider an appeal that seeks to ascertain whether the government satisfactorily complied with the terms of a plea bargain.3 B. B. __ The Merits The Merits __________ The court of appeals affords de novo review to the __ ____ question of whether the prosecution violated the terms of a written plea agreement in a criminal case. Canada, ___ F.2d at ______ ___ [slip op. at 14]; United States v. Moscahlaidis, 868 F.2d _____________ ____________ 1357, 1360 (3d Cir. 1989). Honoring this tenet, and mindful that, in the plea-bargaining context, the prosecution must often be held to "the most meticulous standards of both promise and performance," Correale v. United States, 479 F.2d 944, 947 (1st ________ _____________ Cir. 1973), we find no hint of any breach. Plea agreements are to be interpreted under contract- ____________________ 3The question of appellate jurisdiction is, of course, entirely separate from the question of whether the defendant appropriately preserved his claim for direct appellate review. See, e.g., United States v. Argentine, 814 F.2d 783, 790-91 (1st ___ ____ _____________ _________ Cir. 1987) (discussing applicability of raise-or-waive rule to a claim that the prosecutor transgressed the terms of a plea agreement). Because the instant appeal is baseless on the merits, see text infra, it would be supererogatory for us to ___ _____ consider the issue of procedural default. We, therefore, abjure that exercise. 5 law principles. See Garcia, 954 F.2d at 17; United States v. ___ ______ ______________ Hogan, 862 F.2d 386, 388 (1st Cir. 1988). Here, the Agreement is _____ crystal clear. It limits the government's obligation to offer its views about defendant's cooperation to those instances where the defendant so requests. We assume this clause means precisely what it says; after all, defendant and his trial counsel both signed the Agreement and told the district judge they were satisfied that it faithfully recounted the bargain.4 Appellant concedes that he never requested the prosecutor to address the cooperation question at sentencing. Having failed to ask, appellant was not entitled to receive. Moreover, it was altogether reasonable for the prosecutor to conclude that the lack of an affirmative request was not merely an oversight. The PSI Report alluded to appellant's cooperation in paragraph 17 a paragraph to which appellant raised no objection.5 Under the explicit provisions of the Agreement, it was for appellant to decide whether his cause was better served by reliance on the PSI Report or by augmenting it with an extemporaneous account from the prosecutor. The government had ____________________ 4If the Agreement were deficient for failure to spell out a further, expanded promise, an objection to that effect should have been raised at the change-of-plea hearing. Garcia, 954 F.2d ______ at 17 n.3; Hogan, 862 F.2d at 389 n.4. No such objection ever _____ surfaced in the court below. And, furthermore, the Agreement contained defendant's express warranty "that there [were] no further or other agreements or stipulations, either express or implied, other than those contained in th[e] Agreement." 5Appellant did register eleven objections to the PSI Report, challenging thirteen different paragraphs therein. All these objections were resolved to appellant's satisfaction in the court below. None of them touched upon paragraph 17. 6 no right to play the quidnunc, second-guessing appellant's choice. Refined to bare essence, then, a clearly expressed condition precedent to the government's tentative obligation went unfulfilled. Hence, the prosecutor was not obligated to launch into a gratuitous spiel about Atwood's cooperation. At the expense of belaboring the obvious, we also add that, whatever additional information about appellant's cooperation might have been imparted at sentencing, appellant acknowledges that the GSR would not have been altered. Thus, the incremental information could not have led to a downward departure. It is nose-on-the-face plain that the Agreement did not obligate the government to move for a downward departure based on appellant's cooperation. And, we have squarely held that a sentencing court may not depart on the basis of substantial assistance (a synonym for "cooperation") except when the government so requests. See Amparo, ___ F.2d at ___ [slip op ___ ______ at 11-12]; United States v. Drown, 942 F.2d 55, 56 n.2 (1st Cir. _____________ _____ 1991); Romolo, 937 F.2d at 23; LaGuardia, 902 F.2d at 1013-16; ______ _________ see also U.S.S.G. 5K1.1 (a downward departure in return for a ___ ____ defendant's "substantial assistance" is available "[u]pon motion of the government"). Thus, appellant's complaint was destined to self-destruct; whatever the prosecutor did or did not contribute to the allocution, appellant received the most favorable sentence possible under the circumstances a sentence at the bottom of the applicable GSR. IV IV __ 7 Conclusion Conclusion __________ We need go no further. When, as in this case, the prosecutor did exactly what the government promised to do, a claim that the plea agreement was breached will not lie.6 See ___ Oyegbola, ___ F.2d at ___ [slip op. at 8]; Garcia, 954 F.2d at ________ ______ 17; Hogan, 862 F.2d at 389. Finding no cognizable error in the _____ proceedings below, the conviction and concomitant sentence must be Affirmed. Affirmed. ________ ____________________ 6The rule, of course, is not ironclad. Under certain circumstances, there may be exceptions for instances of a prosecutor's halfhearted compliance with the terms of a plea agreement, United States v. Brown, 500 F.2d 375, 377-78 (4th Cir. _____________ _____ 1974), or where the prosecutor has injected into the dialogue "material reservations about the agreement to which the government had committed itself," Canada, ___ F.2d at ___ [slip ______ op. at 16], or where "the government immediately took away with the left hand what it had given with the right," United States v. _____________ Voccola, 600 F. Supp. 1534, 1537 (D.R.I. 1985). This case, _______ however, does not implicate any of these exceptions. 8